## TURNEY'S ADM'R vs. MORROW.

1. A simple contract creditor, without a lien, cannot go into equity for the
collection of his debt; and therefore, where the purchaser of slaves at
sheriff's sale left them in the possession of the defendant in execution, under
a written agreement that the latter might be allowed to re-purchase them at
a stipulated sum within a specified time ; and the defendant borrowed the
money and paid it over to the purchaser, who afterwards, without defendant's
assent, assigned his bill of sale from the sheriff to the lender,—*held*, that
these facts were not sufficient to enable the assignee to assert a claim to the
slaves in equity for the re-imbursement of the money which he had advanced
to the defendant.

APPEAL from the Chancery Court of Morgan.
Heard before the Hon. E. D. TOWNES.

D. C. HUMPHREYS, for the appellant.
THOS. M. PETERS, *contra.*

LIGON, J.—The bill in this case was filed by the appel-
lant, as administrator of Daniel Turney, deceased, for the
purpose of enjoining the execution of a judgment at law, and
to assert and establish a trust in favor of his intestate in cer-
tain slaves named in the bill, in which the defendant Morrow
claimed the absolute property.

It appears from the record, that the slaves in controversy
once belonged to Morrow, and were sold by the sheriff of

Morgan county by virtue of executions in his hands against the goods of Morrow, and were bought by one Burlerson, who left them in the possession of Morrow, under a written agreement by which the latter, or any person for him, was allowed to re-purchase them at a stipulated sum to be paid to Burlerson on or before the 1st day of March, 1851. It further appears that, about the 1st March, 1851, Daniel Turney, the appellant's intestate, loaned to Morrow eight hundred and fifty dollars of the money paid to Burlerson on the re-purchase of the slaves, and that Burlerson assigned to Turney the bill of sale for the slaves which he had taken from the sheriff at the time of his purchase; but this was after he had entered into the contract for the re-purchase as above stated, and after the slaves had been delivered to Morrow under that contract, and the sum stipulated by it had been paid to Burlerson by Morrow. As far as the record discloses, this assignment was made without the assent of Morrow, who, from the proof, does not appear to have participated in it. It further appears, that Morrow proposed to give the intestate a lien on some of the slaves, to secure the payment of the sum of eight hundred and fifty dollars which the latter had loaned him to enable him to effect the re-purchase from Burlerson; but that this offer was never fully accepted by Daniel Turney, nor any terms agreed upon or reduced to writing to carry out the proposition made by Morrow. Upon this case, the chancellor, at the hearing on the pleadings and proof, dismissed the bill, without prejudice, and from his decree an appeal is prosecuted to this court.

The decree is correct. The appellant's intestate had no lien whatever on the slaves, and occupies no higher position with regard to them than any other simple contract creditor of Morrow. There is no trust raised in his favor, by the mere fact that Morrow used the money which he borrowed from the intestate in paying Burlerson the sum necessary to re-purchase the slaves. Nor is any trust in his favor created by the proposition or offer of Morrow to give him a lien on the slaves, to secure the re-payment of the sum loaned to him by Turney. Until this offer was agreed to by Turney, there was nothing to hinder Morrow from withdrawing it at any time he pleased; and there is no proof which shows that the

*locus penitentiæ* was ever taken from him during the lifetime of Daniel Turney, the intestate.

The assignment of the bill of sale from the sheriff to Burlerson, by the latter to the intestate, conferred no right in the slaves on the assignee ; first, because at the time of the transfer the slaves were not in the possession of Burlerson ; and, secondly, because he had, before it was made, parted with all claim he ever had to them, by receiving the sum which, by his agreement with Morrow, the latter was to pay for their repurchase. As Morrow had the possession of the slaves at the time the money on the re-purchase was paid to Burlerson, that possession drew to it the title, so soon as the payment of the purchase money was completed, and Burlerson had nothing to convey.

The mere assignment of a paper title for personal property, when the property is in possession of another under such circumstances as are shown in this case, confers no right or claim, either in law or equity, on the assignee.

Upon the whole, this must be regarded as an effort of a simple contract creditor, without a lien, to go into equity for the collection of his debt, which cannot be allowed.

Let the decree of the chancellor be affirmed, at the cost of the appellant in this court, and in the court below.